IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00781-RBJ

DON J. and JANICE E. MEINHOLD,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

## ORDER

---

      This matter is before the Court on the government's Motion for Summary Judgment, ECF No. 18. For the reasons discussed in this Order, defendant's motion is granted.

## I.     FACTS

      Plaintiffs Don and Janice Meinhold ("the Meinholds") filed their 2007 Form 1040 income tax return around October 15, 2008. ECF No. 1 at ¶ 8. Their tax return reported flow-through income from the sale of an entity called DJM, LLC ("DJM"). *Id.* at ¶ 9. DJM filed a Form 1065 tax return for the 2007 taxable year. *Id.* DJM subsequently discovered an error on its return and filed an amended Form 1065 and a Form K-1 setting forth the Meinholds' revised flow-through income from the sale of DJM. *Id.* at ¶ 10. As a result, around December 23, 2008, the Meinholds filed their first amended return ("First Amended Return"), Form 1040X, claiming a refund of $321,947.00. *Id.* at ¶ 11; ECF No. 18-3 (Ex. LY-2). The Internal Revenue Service

("IRS") granted the requested refund by abating the Meinholds' 2007 tax in that amount.  ECF
No. 18 at 2; ECF No. 18-6 (Ex. LY-5) at 4.

After filing their First Amended Return, the Meinholds discovered that it contained a
mathematical error regarding their flow-through income from the sale of DJM.  ECF No. 1 at ¶
12.  Around May 1, 2010, the Meinholds claim that they signed and dated a second amended
return ("Second Amended Return") that corrected the error.  *Id.* at ¶ 13.  It made no reference to
the First Amended Return, but it contained the same "explanation of changes."  ECF No. 18 at 6;
ECF No. 18-8 (Ex. LY-7).  The Second Amended Return claimed a refund of $432,070.00.  ECF
No. 1 at ¶ 13.  The Meinholds allege that they placed the Second Amended Return in an
envelope addressed to the IRS service center in Fresno, California, affixed the envelope with
postage, and placed the envelope in a U.S. Mail collection slot at their residence.  *Id.* at ¶ 14.
The IRS has no record of receiving it.  ECF No. 14 at 2.

When the Meinholds did not receive the refund that they claimed in the Second Amended
Return, they attempted to contact the IRS by phone but were unsuccessful.  ECF No. 1 at ¶ 17.
Around July 5, 2011, the Meinholds mailed a letter ("July Letter") to the IRS.  ECF No. 20-7
(Ex. NR-10).  It stated, "In early May, 2010 we filed an amended Federal Individual Income Tax
Return for the calendar year 2007 with the Fresno IRS office.  This return requested a substantial
refund."  *Id*.  It asked the IRS to advise them of the status of their refund application and whether
they needed to "do anything else to expedite the refund."  *Id.*

On August 8, 2011, the IRS replied to the July Letter stating in part, "We haven't
resolved this matter because we haven't completed all the research necessary for a complete
response.  We will contact you again within 45 days . . . You don't need to do anything further

now[.]" ECF No. 20-8 (Ex. NR-11).  On September 21, 2011, the IRS sent the Meinholds a second letter asking them to "allow an additional 45 days for us to obtain the information we need and to let you know what action we are taking."  ECF No. 20-9 (Ex. NR-12).  Finally, on January 20, 2012, the IRS sent the Meinholds a letter stating, "We have no record of receiving your tax return . . . please send us a NEWLY SIGNED copy of your return."  ECF No. 20-10 (Ex. NR-13).  The Meinholds then sent the IRS a newly signed copy of the Second Amended Return.  ECF No. 1 at ¶ 22.

In a letter dated March 15, 2012, the IRS informed the Meinholds that it could not allow their refund claim because it was filed "more than three years after the tax return due date."  ECF No. 20-11 (Ex. NR-14).  The Meinholds had until October 15, 2011 to file a claim regarding the 2007 taxable year.  *Id.*  The Second Amended Return was postmarked January 25, 2012.  *Id.* The Meinholds subsequently filed an administrative appeal for reconsideration of their Second Amended Return.  ECF No. 1 at ¶ 27.  Around April 11, 2013, the IRS Brookhaven Office of Appeals denied the Meinholds' administrative claim for reconsideration.  *Id.* at ¶ 28.  On March 14, 2014 the Meinholds filed this action against the government seeking a tax refund under 26 U.S.C. §§ 6511 and 7422 for $432,070.00[1].  *Id.* at ¶¶ 43–46.

The government moves for summary judgment arguing, among other things, that the Meinholds' failure to file a timely administrative claim is dispositive.

---

[1] The Meinholds now assert that they are entitled to a refund of $379,000.00, an amount that they claim is "subsumed within" the refund amount specified in their Second Amended Return and Complaint.  ECF No. 20 at 17.  These numbers also appear to ignore the fact that the Meinholds have already been refunded $327,104.

## II.     STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III.     ANALYSIS

Section 7422(a) of the Internal Revenue Code requires a taxpayer to file an administrative claim for refund before filing a tax refund suit. It provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

4

26 U.S.C. § 7422(a).  Filing a timely administrative claim with the IRS is considered "a jurisdictional prerequisite to maintaining a tax refund suit."  *Angle v. United States*, 996 F.2d 252, 253 (10th Cir. 1993).  In order for the claim to be timely, it must "be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later[.]"  26 U.S.C. § 6511(a).

In the present case, the Meinholds paid their 2007 taxes when they submitted their return on October 15, 2008.  ECF No. 1 at ¶ 8.  They were therefore required to file an administrative claim for refund within three years—by October 15, 2011—as a jurisdictional prerequisite to bringing this suit.  In response to the government's argument that they failed to meet this requirement, the Meinholds claim that 1) they timely filed the Second Amended Return under the common law mailbox rule; 2) they timely filed the July Letter which constituted an informal claim for refund; and 3) the "mitigation provisions" of the Internal Revenue Code and the doctrines of equitable tolling, estoppel, and waiver each provide a separate basis upon which the Court can entertain this tax refund suit.  ECF No. 20.

## A. Formal Claim (the "Mailbox Rule")

The burden is on the taxpayer to establish the timely filing of a proper administrative claim.  *Maine Med. Ctr. v. United States*, 675 F.3d 110, 114 (1st Cir. 2012).  The ways in which taxpayers may prove timely filing have changed significantly over time.  In *Crude Oil Corp. v. C.I.R.*, a tax deficiency suit, the Tenth Circuit applied the common law mailbox rule to determine whether the taxpayer made a timely capital stock election.  161 F.2d 809, 810 (10th Cir. 1947).  The *Crude Oil* court explained, "[w]hen mail matter is properly addressed and deposited in the United States mails, with postage duly prepaid thereon, there is a rebuttable presumption of fact

that it was received by the addressee in the ordinary course of mail." *Id.* Furthermore, the court

stated, "[p]roof of due mailing is prima facie evidence of receipt." *Id.* at 810.

Several years later, the Tenth Circuit rejected application of the mailbox rule in a tax

refund suit without citing to the *Crude Oil* opinion. *United States v. Peters*, 220 F.2d 544 (10th

Cir. 1955). Instead, it applied the "physical delivery rule." *Id.* at 545. The physical delivery

rule "deems a tax document filed when it is delivered to and received by the IRS." *Sorrentino v.*

*I.R.S.*, 383 F.3d 1187, 1190 (10th Cir. 2004). After *Crude Oil* and *Peters*, "taxpayers in the

Tenth Circuit faced substantial uncertainty concerning the timely filing of tax documents." *Id.*

Amid this confusion, Congress enacted § 7502 of the Internal Revenue Code which

addresses the timely filing of tax documents. 26 U.S.C. § 7502. A taxpayer can establish timely

filing through proof of actual physical delivery within the limitations period or a postmark dated

prior to the filing deadline. § 7502(a)(1). In the latter case, the postmark date effectively

becomes the "delivery" date. *Id.* Additionally, a taxpayer can establish timely filing by

producing a registered or certified mail receipt dated prior to the filing deadline. § 7502(c)(1).

The date of registration or certification effectively becomes the "delivery" date. *Id.*

In the present case, the Meinholds have put forth no evidence of actual delivery, a

postmark, or a registered or certified mail receipt in order to prove timely filing of the Second

Amended Return under § 7502. Instead, they offer Mr. Meinhold's sworn testimony that he

mailed their Second Amended Return in early May, 2010. ECF No. 20-13 (Ex. NR-16).

Additionally, they point to the Second Amended Return which was sent to the IRS in January of

2012. ECF No. 20 at 15. It includes the signature of the preparer, James Furlong, and is dated

"4/30/10," just days prior to the date on which the Meinholds claim to have mailed it for the first

time.  ECF No. 20-6 (Ex. NR-9).  Furthermore, the Meinholds maintain that the fact that they were prepared to resubmit their return, as indicated by the July Letter, is sufficient circumstantial evidence to raise a question of fact regarding whether they satisfied the mailbox rule.  ECF No. 20 at 16.

There is a split in the Circuit Courts of Appeal as to whether § 7502 supplants the common law mailbox rule entirely.  *Maine Med. Ctr.*, 675 F.3d at 116.  In *Sorrentino*, the Tenth Circuit Court of Appeals addressed what, if anything, remained of the mailbox rule after the enactment of § 7502.  383 F.3d at 1193.  The court stated,

> [G]iven the uncertainty as to what extent, if any, Congress intended to supplant the mailbox rule in enacting § 7502, I decline to hold the production of a registered, certified, or electronic mail receipt are the only means by which a taxpayer may establish timely delivery . . . I decline to adopt the IRS's argument that § 7502 abolishes the mailbox rule because . . . the present language of § 7502 *does not compel* such a result.

*Id.* (emphasis in original).  Even after *Sorrentino*, there appears to be confusion in the Tenth Circuit about the viability of the mailbox rule.  *See Crook v. Comm'r Of Internal Revenue Serv.*, 173 F. App'x 653, 657 (10th Cir. 2006).  In *Crook*, the Tenth Circuit stated, "[w]e have not yet decided whether § 7502 provides the exclusive method by which timely mailing can be proven . . . our decision in *Sorrentino* is equivocal at best[.]"  *Id.*

In 2011 the Treasury Department promulgated regulations interpreting § 7502 that appear to foreclose the use of the mailbox rule as a means of proving timely delivery.  Treas. Reg. § 301.7502-1(e)(2); *see Maine Med. Ctr.*, 675 F.3d at 118.  But even if the regulations are disregarded, the question of whether § 7502 supplants the common law mailbox rule is rendered moot in this instance because the Meinholds cannot meet their burden even under the more lenient mailbox rule.  A taxpayer may rely on circumstantial evidence of timely mailing in order

7

to trigger the mailbox rule's rebuttable presumption of timely delivery.  *Davis v. United States*, 230 F.3d 1383, at *2 (Fed. Cir. 2000) (unpublished).  However, a taxpayer cannot rely solely on his own uncorroborated testimony.  *Id.* at *3; *Sorrentino*, 383 F.3d at 1194–95 ("Such an endorsement would necessarily result in a jury trial every time a taxpayer, regardless of the surrounding circumstances, alleges timely mailing.").  The *Sorrentino* court stated, "absent some proof of an actual postmark or dated receipt, a presumption that tax documents allegedly mailed to the IRS were in fact received does *not* arise based solely upon a taxpayer's self-serving testimony."  383 F.3d at 1195.

Accordingly, Mr. Meinhold's testimony by itself is not sufficient to prove timely filing. The other circumstantial evidence put forth by the Meinholds, the date next to the preparer's signature on the Second Amended Return and the Meinholds' willingness to submit their return prior to the deadline, demonstrates that the Meinholds were *prepared* to file their return before the deadline, but not that they actually *mailed* their return before the deadline.  As a matter of law, this evidence is insufficient to trigger the mailbox rule's rebuttable presumption of timely delivery.

Finally, the Meinholds note that the IRS Certificate indicates that an amended return was filed on September 6, 2012.  ECF No. 20 at 16; ECF No. 20-12 (Ex. NR-15) at 3.  The Meinholds assert that a question of fact exists as to whether the return filed on September 6, 2012 was the missing Second Amended Return that they allegedly mailed in early May, 2010. *Id.*  The IRS claims that the return received on September 6, 2012 was a version of the Second Amended Return filed as a part of the Meinholds' appeal request.  ECF No. 24 at 2–3; ECF No. 24-2 (Ex. LY-15); ECF No. 24-1 at ¶ 2.  The Meinholds offer no evidence, aside from their

speculation, that the document referenced in the IRS's Certificate is their original Second

Amended Return.  Mere speculation is insufficient to create a genuine issue of material fact to

defeat a motion for summary judgment.  *Bones*, 366 F.3d at 876.

The Meinholds repeatedly assert that they have put forth sufficient evidence to "raise the

rebuttable presumption of *timely mailing*."  ECF No. at 14–16 (emphasis added).  But they

misunderstand the mailbox rule.  It first requires the taxpayer to make "a meaningful evidentiary

showing of 'proper and timely' mailing[,]" which then "raises a rebuttable presumption that the

mailing was in fact received by the addressee."  *Sorrentino*, 383 F.3d at 1195.  Because the

Meinholds have not demonstrated the existence of a genuine dispute about facts that could

trigger the presumption, they cannot rely on 26 U.S.C. § 7502 or the common law mailbox rule.

**B.  Informal Claim**

The Meinholds alternatively claim that, considered together, the July Letter and the IRS's

responses amounted to an informal refund claim.  ECF No. 20 at 9.  I do not agree.

The Supreme Court has long recognized the informal claim doctrine as an exception to

the strict requirements for filing a tax refund claim.  *United States v. Kales*, 314 U.S. 186, 194

(1941).  The *Kales* court stated,

> a notice fairly advising the Commissioner of the nature of the taxpayer's claim,
> which the Commissioner could reject because too general or because it does not
> comply with formal requirements of the statute and regulations, will nevertheless
> be treated as a claim where formal defects and lack of specificity have been
> remedied by amendment filed after the lapse of the statutory period.

*Id.*  "An informal claim . . .  requires a court to go beyond the written component and examine

the facts and circumstances which are presented in every case."  *New England Electric Sys.*, 32

Fed. Cl. at 641.  The question is whether, under the unique set of facts and circumstances, "the

Commissioner knew, or should have known, that a claim was being made." *Newton v. United States*, 163 F. Supp. 614, 619 (Ct. Cl. 1958).

But an informal claim must 1) provide the IRS with adequate notice that the taxpayer is asserting a right to a refund, 2) explain the legal and factual basis for the refund request, and 3) consist of some written component. *Dzula v. United States*, 349 F. App'x 335, 339 (10th Cir. 2009) (unpublished) (citing *New England Electric Sys. v. United States,* 32 Fed. Cl. 636, 641 (Fed. Cl. 1995)). Furthermore, "an informal claim for refund does not provide a district court with jurisdiction until either the informal claim is perfected by the filing of a valid formal claim or the IRS explicitly or implicitly waives formal compliance." *Schirmer v. United States*, No. 93-5255, 1995 WL 20417, at *3 (10th Cir. 1995).

The government argues that even if the Court considers both the July Letter and the IRS's responses, the Meinholds failed to make an informal claim in part because they never informed the IRS of the legal and factual basis for the refund they were seeking. ECF No. 18 at 14–15. In response, the Meinholds state that they provided the IRS with "all the necessary information" to constitute an informal claim. EFC No. 20 at 11. However, the July Letter did not describe the legal or factual basis for the refund in any way. ECF No. 20-7 (Ex. NR-10). It simply stated, "In early May, 2010 we filed an amended Federal Individual Tax Return for the calendar year 2007 with the Fresno IRS office." *Id.* It specified that the return "requested a substantial refund." *Id.* Furthermore, the IRS's letters give no indication that the IRS had an understanding of the basis for the Meinholds' refund claim. ECF No. 20-8 (Ex. NR-11); ECF No. 20-9 (Ex. NR-12); ECF No. 20-10 (Ex. NR-13). Finally, the Meinholds do not point to any facts indicating that other surrounding circumstances would have put the IRS on notice of the basis for their claim.

The government also contends that the Meinholds' July Letter did not constitute an informal claim because it did not specifically request a refund of a sum certain.  ECF No. 18 at 15.  Many courts have recognized that an informal claim must put the IRS on notice of the specific amount of refund requested.  *See e.g.*, *Video Training Source, Inc. v. United States*, 991 F. Supp. 1256, 1260 (D. Colo. 1998) (the informal claim must "inform[] the IRS of a specific amount and a basis for the refund"); *Stelco Holding Co. v. United States*, 42 Fed. Cl. 101, 113 (Fed. Cl. 1998).  The taxpayer need not include the sum certain in the written component of the informal claim.  *New England Elec. Sys.*, 32 Fed. Cl. at 644.  Instead, the taxpayer may inform the IRS of the sum certain through oral conversations or other writings.  *Id.*  In this case, however, there is no evidence indicating that the Meinholds supplied the IRS with the amount of refund requested in any part of their purported informal claim.

The Meinholds assert that they satisfied the informal claim doctrine by supplying the IRS with the amount of refund requested in their untimely formal claim, the Second Amended Return postmarked January 25, 2012.  ECF No. 20 at 12–13.  In making this argument, the Meinholds misconstrue the informal claim doctrine.  The refund amount is a requirement of the *informal* claim.  The Meinholds could not have satisfied the informal claim doctrine by supplying the IRS with the amount of refund requested in their untimely formal claim.

The *Stelco* opinion underscores this point.  The plaintiff argued that it filed a timely informal claim that was perfected by an untimely formal claim.  42 Fed. Cl. at 113.  The court recognized that an untimely formal claim may be used to perfect an *adequate* informal claim.  *Id.* at 114 (noting that an untimely formal claim can be used to perfect a valid informal claim by "correcting relatively minor irregularities and omissions").  The court determined, however, that

the plaintiff failed to file an efficacious informal claim. *Id.* The court stated that the record "from which the existence of an informal claim might be gleaned makes absolutely no reference to the taxable year . . . nor to an asserted sum certain respecting the refund sought for that year[,]" and that "[t]his lack of specificity, left uncured, is fatal." *Id.* Furthermore, the court held that the plaintiff's untimely formal claim could not be used to perfect the lack of specificity in the inadequate informal claim. *Id.* The court noted that the plaintiff's untimely formal claim attempted to perfect "two indispensable elements" of an efficacious claim, the amount of refund requested and the taxable year. *Id.* at 113. "[T]he notion that an otherwise inadequate informal claim can be perfected, *after the statute of limitations has expired,* by the filing of an untimely formal claim is difficult, if not impossible, to reconcile with the strict jurisdictional construction given § 6511(a) by recent decisions of the Supreme Court." *Id.* at 114 n.25 (emphasis in original) (citing *United States v. Brockamp,* 117 S.Ct. 849, 851–52 (1997) and *United States v. Dalm,* 494 U.S. 596, 608–10 (1990)).

The Meinholds fail to put forth sufficient evidence to demonstrate a dispute of material facts concerning the filing of an informal claim "fairly advising the [IRS] of the nature of [their] claim." *Kales*, 314 U.S. at 194. Looking at all of the facts and circumstances, including the July Letter and the IRS's responses, in the light most favorable to the plaintiffs, there is no indication that the Meinholds informed the IRS of the specific amount of refund they desired or the legal and factual basis for their claim before the limitations period expired. As such, a reasonable juror could not find that the Meinholds made an adequate informal claim. Furthermore, the Meinholds cannot rely on an untimely formal claim to supplement such indispensable elements missing from their inadequate informal claim.

**C.  The Meinholds' Remaining Legal Theories**

The Meinholds contend that the government's summary judgment motion must be denied because it fails to address four of their legal theories for recovery: 1) the "mitigation provisions" of 26 U.S.C. §§ 1311–1314, 2) equitable tolling, 3) estoppel, and 4) waiver.  ECF No. 20 at 2. The government asserts in its Reply that these legal theories do not preclude summary judgment because they do not apply under the facts of this case.  ECF No. 24 at 4.  For the reasons discussed below, I agree with the government.

1.  The Mitigation Provisions.

The Meinholds argue that the mitigation provisions of the Internal Revenue Code provide a basis upon which the Court can "reopen" the limitations period for the 2007 taxable year.  26 U.S.C. §§ 1311–1314; ECF No. 1 at 1.  I disagree.  The mitigation provisions "provide relief from the normally applicable statutes of limitation for both taxpayers and the Government in cases where a deduction is claimed or income is assessed in the wrong year, or a single deduction or a single item of income is allowed or assessed in each of two years."  *J. B. N. Tel. Co. v. United States*, 638 F.2d 227, 235 (10th Cir. 1981); 26 U.S.C. §§ 1311–1314.  Section 1311(a) provides as follows:

> If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

The mitigation provisions are inapplicable to the present case.  "For the mitigation provisions to apply, there must be an 'inconsistency' that, unless adjusted, will cause the types of

unfair results in successive tax years described in § 1312." *Illinois Lumber & Material Dealers Ass'n Health Ins. Trust v. United States*, 794 F.3d 907, 912 (8th Cir. 2015). Even if the denial of the Meinholds' refund claim qualifies as a "determination" as defined in § 1313, it does not create an inconsistency between successive tax years. Furthermore, the denial of the Meinholds' claim does not fall within one of the seven "circumstances of adjustment" listed in § 1312. Therefore, the Meinholds' assertion that the mitigation provisions should toll the limitations period in this case must fail as a matter of law.

2. Equitable Tolling.

The Meinholds contend that they timely filed a refund claim because they were entitled to equitable tolling of § 6511's statutory limitations period. ECF No. 1 at 1. The Supreme Court has held "that Congress did not intend the 'equitable tolling' doctrine to apply to § 6511's time limitations." *Brockamp*, 519 U.S. at 354. As such, equitable tolling is inapplicable in this case as a matter of law.

3. Estoppel.

The Meinholds insist that the government should be estopped from invoking § 6511's limitations period. ECF No. 1 at 1. In *Brockamp*, the Supreme Court stated that § 6511's "detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." 519 U.S. at 352. Another court in this district and several Circuit Courts of Appeal have recognized that *Brockamp* proscribes all equitable exceptions to § 6511's limitations periods, including estoppel. *Video Training Source, Inc.*, 991 F. Supp. at 1263; *Dickow v.*

14

*United States*, 654 F.3d 144, 146 (1st Cir. 2011).  I conclude, therefore, that the government is not estopped from invoking § 6511's limitations period in this case.

    4.  <u>Waiver</u>.

    Finally, the Meinholds argue that the IRS waived the statute of limitations defense.  ECF 20 at 8.  Specifically, the Meinholds assert that the IRS's statement that the Meinholds did not "need to do anything further" waived the requirements for a formal refund claim.  *Id.* Additionally, they contend that the IRS's statement to "please allow an additional 45 days for us to obtain the information we need and to let you know what action we are taking" waived the requirements for both a formal and an informal claim.  *Id.*

    Following the Supreme Court's decision in *Brockamp*, several Circuit Courts of Appeal have expressed concern regarding the viability of the waiver strand of the informal claim doctrine.  *PALA, Inc. Employees Profit Sharing Plan & Trust Agreement v. United States*, 234 F.3d 873, 880 (5th Cir. 2000); *BCS Fin. Corp. v. United States*, 118 F.3d 522, 526 (7th Cir. 1997) (noting the tension between the waiver doctrine and *Brockamp*).  This Court need not decide whether *Brockamp* proscribes the waiver doctrine because even if the doctrine survived *Brockamp*, it does not apply in this case.  First, for the waiver doctrine to apply, the taxpayer must file an informal refund claim.  *See Schirmer*, 46 F.3d 1152, *3.  As explained above, the Meinholds' July Letter did not constitute an informal claim.  Anticipating this problem, the Meinholds argue that the IRS also waived the requirements of an informal claim.  The Meinholds seem to misunderstand this aspect of the waiver doctrine.  "The waiver doctrine does not provide a separate 'ticket to court' for taxpayers who have failed to submit an informal claim."  *Green v. United States*, No. 14-CV-94-GKF-TLW, 2015 WL 1138324, at *2 (N.D. Okla. Mar. 12, 2015).

Second, the IRS must examine the merits of the informal claim. *Angle*, 996 F.2d at 255. Even the Meinholds admit that the IRS denied their claim "without any examination or consideration, on the basis that it was" untimely. ECF No. 20 at 5. For the above reasons, the Meinholds' assertion that the waiver doctrine applies to their refund claim fails as a matter of law.

### D. **Jurisdiction**

As set forth in 26 U.S.C. § 7422(a), a taxpayer must file a timely administrative claim for refund as a jurisdictional prerequisite to filing a tax refund suit in federal court. "[T]he party invoking federal jurisdiction bears the burden of proof." *Dzula*, 349 F. App'x at 338 (quoting *Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008)). In this case, the Meinholds have failed to put forth sufficient evidence to demonstrate a genuine dispute of material facts concerning the timely filing of an administrative claim. As such, the Court lacks subject matter jurisdiction over the Meinholds' claims.

## IV.    ORDER

Defendant's motion for summary judgment, ECF No. 18, is GRANTED. The case is dismissed for lack of jurisdiction. The defendant is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 30th day of October, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge